**NIGHT BOX FILED**

**MAY 21 2001**

**CLERK, USDC / SDFL / WPB**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 00-6211-CR-HURLEY(s)

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) |
| | ) |
| RAED ALDIN | ) |
| | ) |
| _____ | ) |

<u>UNITED STATES' RESPONSE TO MOTION TO SUPPRESS STATEMENTS</u>

The United States of America, by and through undersigned counsel, hereby files this response to Defendant, RAED NASER ALDIN's Motion to Suppress Statements. On June 5, 2000, Aldin was stopped after leaving a townhouse located at 704 North Broughton Circle, Boynton Beach, Florida. After Aldin was stopped, he made statements to law enforcement officials. Aldin claims there was no probable cause or reasonable suspicion to stop him and therefore any stop was invalid. Aldin's claims are without merit.

Agents had been conducting round the clock surveillance on a storage warehouse and the Boynton Beach townhouse for days. During that time they observed massive quantities of pseudoephedrine, a precursor in the manufacture of methamphetamine, leaving the warehouse under suspicious circumstances. They then observed Aldin and others at that townhouse acting in a suspicious

manner. Accordingly there was probable cause to search the townhouse and reasonable suspicion to stop Aldin.

## FACTS

On May 23, 2000, Thomas Narog owner of Seaside Pharmaceuticals received 667 cartons (7,013 gross pounds) of 60 mg tablets of pseudoephedrine at his Seaside Pharmaceuticals warehouse at the Shurguard Storage Facility located at 1650 West Oakland Park Boulevard. Agents had been investigating Narog and Seaside Pharmaceuticals and knew that this shipment was just one of the many shipments of pseudoephedrine that he had received. On June 1, 2000, agents who were conducting surveillance on the warehouse observed Defendant Raed Aldin and co-defendant Motlaq Jaber back a U-Haul truck completely into unit 206 at the Shurguard Storage Facility. Agents followed Jaber and Aldin to a townhouse located at 704 North Broughton Circle, Boynton Beach, Florida, the location where a search warrant was eventually executed, and massive amounts of loose pseudoephedrine pills were recovered. The agents observed Aldin and Jaber deliver the U-Haul truck filled with several hundred boxes of pseudoephedrine to the garage of the townhouse. Agents followed Aldin and Jaber as they repeated this activity three hours later, with additional boxes of pseudoephedrine delivered to the townhouse.

Round the clock surveillance was initiated on the townhouse after the delivery of massive quantities of pseudoephedrine, an

over the counter cold medicine used in the manufacture of methamphetamine. While conducting surveillance on the townhouse, agents observed Raed Aldin, Motlaq Jaber, Nabil Aquil, Nizar Fneiche and others discard very large quantities of empty Tru-Choice pseudoephedrine bottles in various dumpsters. It should be noted that the bottles that were discarded were not discarded in the closest available trash dumpsters. Instead, the empty bottles were placed in large garbage bags and driven to various dumpsters outside of the townhouse complex. Additionally, they were discarding the empty cardboard boxes containing the bottles of Tru-Choice Pseudoephedrine.

    On June 5, 2000, at approximately 12:15 a.m., agents observed a white Cadillac occupied by three individuals performing counter-surveillance in the area of 704 North Broughton Circle. An agent observed the Cadillac drive slowly behind his surveillance vehicle on two separate occasions. It appeared to the agent that the occupants of the Cadillac were conducting counter-surveillance in an effort to determine a police presence. That same Cadillac was previously observed arriving and departing the townhouse at 704 North Broughton Circle on numerous occasions in the preceding few days.

    At 10:10 the next morning, agents observed a White Pontiac Sunbird, conducting counter surveillance at the Target Store parking lot in Boynton Beach. The Target parking lot is

approximately one block from the townhouse complex. Agents observed the counter-surveillance being conducted for approximately one hour. Raed Aldin was driving that vehicle. The same White Sunbird was observed numerous times arriving and departing 704 Broughton Circle, Boynton Beach, from June 1, 2000 through June 5, 2000.

At 8:15 p.m. on June 5, 2000, agents conducted a vehicle stop of the white Cadillac and Pontiac Sunbird. Co-defendants Nabil Aquil and Nizar Fneiche were the occupants of the Cadillac. Raed Aldin was driving the Sunbird. All three individuals had been observed on numerous occasions entering and exiting the townhouse at 704 Broughton Circle from June 1, 2000 until June 5, 2000. At the time of the vehicle stop, Aldin advised Special Agent Joe Collins that he spoke little English. He claimed that he did not know Aquil and Fneiche. A search of Aldin's vehicle revealed two full bottles of Tru Choice Maximum Pseudoephedrine, the same brand of pseudoephedrine that had been moved from the Seaside Pharmaceuticals storage facility to the residence at 704 North Broughton Circle.

Prior to any statements being made by Raed Aldin, he was read his rights per Miranda. Special Agent Troy Mihok advised Aldin of his rights as witnessed by TFA O'Connor and SA Joe Collins. When initially stopped, Aldin said he spoke very little English and that he did not know Aquil and Fneiche. Aldin advised that the bottles

4

of pseudoephedrine found in his car were for a cold. Aldin continued to deny that he had ever been to 704 Broughton Circle in Boynton Beach, the townhouse where the search warrant was conducted.[1]

## THE STOP WAS PROPER

Aldin seeks to suppress the statements claiming that he was not read his Miranda warnings, and that there was no basis to stop the vehicle. Aldin's motion is without merit and should be denied. There was reasonable suspicion to stop Aldin. He was observed loading and unloading massive quantities of pseudoephedrine from a storage facility into a U-Haul truck. He was observed driving that pseudoephedrine, in a U-Haul truck to a residence, not to a store where the pseudoephedrine could be sold. He was observed unloading the pseudoephedrine into the residence. He was observed conducting counter-surveillance while in the vicinity of the townhouse. And

---

[1] It should be noted that on June 3, 2000, after agents had observed Aldin load and unload numerous boxes of pseudoephedrine from the Shurguard Storage facility and deliver the boxes to the townhouse at 704 North Broughton Circle, and saw Aldin drive to several garbage dumpsters to dump numerous garbage bags containing thousands of empty bottles of Tru-Choice Pharmaceutical Pseudoephedrine, the U-Haul truck Aldin was driving was stopped by the Boynton Beach Police Department in an effort to identify the occupants of the U-Haul. The driver was identified as Aldin Raed Naser. (It should be noted that Raed Aldin appears to alternate his first, middle and last names). At that time, Aldin provided what appeared to be an "international driver's license", which it was later learned could be obtained from a mail order company. At that stop, Aldin claimed his nationality to be Palestinian. He said he was staying with a friend at 2200 North Seacrest in Delray Beach. That address is the residence of the Kwik Stop grocery store. Aldin also gave a telephone number of the Kwik Stop as a local telephone number.

he was observed discarding thousands of empty pseudoephedrine pills in trash dumpsters that were not the closest dumpsters to the residence.

It is acceptable under the Fourth Amendment for the police to stop persons and detain them briefly in order to investigate a reasonable suspicion that the persons have engaged in or are about to engage in criminal activity. See Terry v. Ohio, 392 US 1 (1968). The *Terry* rationale also allows the police to conduct an investigatory stop of a car. See United States v. Sharpe, 470 U.S. 675(1985); see also United States v. Mikell, 102 F.3d 470, (11th Cir. 1996). Reasonable suspicion is more than just a hunch, as the Fourth Amendment requires at a minimum, some objective justification for the investigatory stop. Reasonable suspicion is considerably less than proof of wrongdoing by a preponderance of the evidence or even the requirement of probable cause. United States v. Mikell, 102 F.3d at 475; see also United States v. Tapia, 912 F.2d 1367 (11th Cir. 1990). The primary bases for reasonable suspicion are a police officer's personal observations, and the collective knowledge of law enforcement officials. See Illinois v. Wardlow, 120 S.Ct. 673, 676 (2000). Courts should afford considerable deference to the observations and conclusions of the police as an experienced officer can infer criminal activity from conduct that seems innocuous to a lay observer. Ornelas v. United States, 517 U.S. 690, 700 (1996). Reasonable suspicion is

determined from the totality of the circumstances. <u>Mikell</u>, 102 F.3d at 475.

In this case, law enforcement officials had reasonable suspicion to stop the vehicle Aldin was driving. They had been conducting round the clock surveillance on a warehouse and a townhouse where Aldin had been seen. They had observed Aldin and others pick up massive quantities of pseudoephedrine, used in the manufacture of methamphetamine, and deliver it to a residence in Boynton Beach. A few hours later they saw him do the same thing. They observed Aldin and others at the townhouse discard thousands of empty bottles of pseudoephedrine in trash bags. Instead of dumping the empty bottles in the dumpsters near the townhouse, they loaded the empty bottles in the U-Haul truck or other vehicles and drove with the garbage to other dumpsters where they could be discarded. Agents had already followed shipments of Seaside Pharmaceuticals Tru-Choice Pseudoephedrine to California where it was found in clandestine methamphetamine labs.

Aldin and the others were also observed conducting counter-surveillance. Aldin was stopped on June 3, 2000, by the Boynton Beach Police Department. At that time, he was identified as Aldin Raed Nasser. He was stopped on June 5, 2000 after conducting counter-surveillance in the Target parking lot. On that occasion, he was read his rights per Miranda. He agreed to speak to the agents. He informed the agents that he spoke little English

(although they were able to communicate with him). He also said that he did not know Nabil Aquil and Nizar Fneiche, two of the other individuals who were seen with him at the townhouse at 704 North Broughton Circle. When agents discovered 2 bottles of Tru-Choice Pseudoephedrine, manufactured for Seaside Pharmaceuticals in his car, he claimed that he had a cold. Aldin also claimed that he had never been to the residence at 704 North Broughton Circle.

When a search warrant was executed on that residence, agents discovered millions of loose pseudoephedrine pills, in plastic bags and cardboard boxes. No one was living in the residence. The pseudoephedrine pills had been removed from the bottles and placed in larger baggies which contained nothing but loose pills. There was no legitimate purpose for the loose pills. They were going to be shipped to the West Coast to be manufactured into methamphetamine. Agents had previously followed shipments of Seaside Pharmaceuticals Tru-Choice Pseudoephedrine to California where it was found in clandestine methamphetamine labs.

Aldin voluntarily, knowingly and intelligently waived his rights and made statements to the agents. See Miranda v. Arizona, 384 U.S. 436, 475 ((1966). Aldin voluntarily waived his rights and was aware that the rights were being waived and the consequences of waiving those rights. In determining the validity of the waiver, this Court should look at the totality of circumstances surrounding the interrogation. See Moran v.

Burbine, 475 U.S. 412, 421 (1986). Factors to consider include the suspect's age, intelligence, education, familiarity with the criminal justice system and mental and physical condition. After being advised of his rights, Aldin chose to make statements in an effort to distance himself from the activity occurring in the townhouse.

WHEREFORE, the United States respectfully requests that this Court deny Defendant, Raed Aldin's Motion to Suppress Statements.


Respectfully submitted,

GUY A. LEWIS
UNITED STATES ATTORNEY

By: _____
LAURENCE M. BARDFELD
Assistant U.S. Attorney
500 East Froward Blvd., #700
Ft. Lauderdale, Florida  33394
(954) 356-7255, Fax: 356-7228
Fla. Bar No. 712450

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was mailed/hand-delivered this 21st day of May, 2001, to: Charles White, Esquire, 2250 SW 3rd Ave., Suite 150, Miami, Fl 33129.

_____
LAURENCE M. BARDFELD
ASSISTANT U.S. ATTORNEY