UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 00-6211-CR-HURLEY

UNITED STATES OF AMERICA,

    Plaintiff,

-vs-

RAED NASER ALDIN,

    Defendant.

_____/



### OBJECTIONS TO SENTENCING GUIDELINE CALCULATIONS IN PRE-SENTENCE INVESTIGATION REPORT

    The Defendant, **RAED NASER ALDIN**, through counsel, respectfully objects to the following portions of the Pre-Sentence Investigation Report (hereinafter "PSI"), and in support thereof would state:

    1. On pages 13 and 14, paragraphs 51 and 58, of the PSI, it is recommended that he receive a two-level enhancement pursuant to U.S.S.G., Section 3C1.1, on the grounds that he provided false trial testimony and false statements to law enforcement. The probation officer admits that the recommendation was made based upon the representations by the Government. The specific allegations as related to trial testimony are presented and rebutted as follows:

    (a) According to the PSI, it was a false statement when "the defendant maintained that he was advised that the pseudoephredine was to be packed for shipment

1



abroad, not for distribution in the United States." There was nothing adduced at trial to contradict that assertion. To the contrary, in addition to telling NASER ALDIN that the pseudoephredine was being exported, Thomas Narog was presenting to the DEA documents which he claimed proved he was exporting the pseudoephredine. The Government was able to uncover the falsity of those documents only after exhaustive investigation involving State Department officials in Israel. NASER ALDIN relied upon the representations of Ghandi Jaber, and since he was aware of the Jaber family's position in Israel, it came as no surprise to him that the product was being exported. The Government failed to establish the falsity of that testimony.

(b) According to the PSI, the Government has related that the Defendant lied when he "stated that he did nothing to hide his identity or whereabouts while in the United States." To the contrary, the evidence was clear that he did not hide his identity while in the United States. He carried identifications which were consistent with his true name. He was revealed as a resident at 704 Bronough Circle in Boynton Beach for the three months prior to the storing of the pseudoephredine at that location. He owned an automobile which was titled in his true name. He admitted to being transient during the time he resided in

South Florida, and used the address of the Quik Stop which was owned by Ghandi Jaber and Samir Al-Sharif, and where he did some work on the automobile title. When confronted with a post office box as an address on bank records, NASER ALDIN indicated that he had rented a mail box. The Government offered no evidence to refute those assertions. The Government's theory going into the trial was that this Defendant's last name was ALDIN. Evidence was revealed that his proper family name in English was NASER ALDIN. With the truth revealed and verified by the Arabic interpreters who assisted NASER ALDIN during trial, the Government has failed in its efforts to show the use of an alias name or efforts to conceal his identity.

(c) The PSI also notes that NASER ALDIN "claimed that the five, 60 count, pseudoephedrine bottles found in his car were for his cold." This alleged false statement was supposedly refuted by Government's evidence that illicit pseudoephedrine dealers would often carry pseudoephedrine bottles in their car to show as samples to others who were interested in making methamphetamine. It is true that certain witnesses from California testified to the use of bottles of pseudoephedrine as samples. Those same witnesses indicated that California is where all the methamphetamine laboratories were located. Other witnesses established that all the pseudoephedrine involved in this case was destined

for California. Anybody showing samples to methamphetamine laboratories would necessarily have to take them to California. There was absolutely no evidence to suggest that NASER ALDIN was going to meet someone in California or anywhere else to show the bottles in his car as samples. The Government's allegation was based entirely upon speculation. It should be noted that the transportation and distribution of approximately 19 million dosage units of pseudoephredine were surveilled during the course of this investigation. There is not one scintilla of evidence to suggest that NASER ALDIN did anything other than move boxes and throw out garbage related to the repackaging of the pseudoephredine between June 1-5, 2000.

When the Government seeks an enhancement for obstruction of justice based upon a defendant's trial testimony, more need be established than the fact he testified and the jury chose to convict him. As stated in Application Note 2 for Section 3C1.1:

> This provision is not intended to punish a defendant for the exercise of a constitutional right. A defendant's denial of guilt (other than a denial of guilt under oath that constitutes perjury), . . . is not a basis for application of this provision. In applying this provision in respect to alleged false testimony or statements by the defendant, the court should be cognizant that inaccurate testimony or statements sometimes may result from confusion, mistake, or faulty memory and, thus, not all inaccurate testimony or statements necessarily reflect a willful attempt to obstruct justice.

The Government should be able to establish that the statements made under oath by NASER ALDIN were willfully false and not the result of lack of memory or merely inaccurate due to confusion or mistake. The Government cannot disprove that the jury believed NASER ALDIN, but felt that his truthful testimony did not reefute what he "had reasonable cause to believe." For instance, on the issue of NASER ALDIN's alleged efforts to hide his identity. The Government assumes, as it argued in summation, that NASER ALDIN was some type of mole living underground in South Florida. This was based upon the claim that the Government did not know who he really was. During argument before this Court, the Government alleged that it did not have possession of NASER ALDIN's passport or other travel document with which his identity could be verified, and that the statement was fair comment. Subsequent investigation has revealed that NASER ALDIN did travel to Canada on a visa which referenced a passport. A document from the U.S. Marshal's Service in Detroit shows that a passport with an identical number was provided the U.S. Marshal's Service at the time of his surrender. Conversations by counsel with a Deputy U.S. Marshal in Detroit indicates that their records reflect that NASER ALDIN's passport was sent by Federal Express to the U.S. Marshals' office in Miami. For the Government to suggest that NASER ALDIN was lying about his

name, and his possession of a passport was not only unfair comment, but directly contradicted by the Government's own records.

In order to justify an obstruction of justice enhancement based upon a defendant's trial testimony, the Court must make a finding that perjury was committed. Perjury requires proof that the witness' false testimony concerned a material matter "designed to substantially affect the outcome of the case". United States v. Dunnigan, 507 U.S. 87, 95, 113 S.Ct. 1111, 1117, 122 L.Ed.2d 445 (1993). The Supreme Court has stated that "it is preferable for a district court to address each element of the alleged perjury in a separate and clear finding". Id. In United States v. Hatney, 80 F.3d 458 (11th Cir. 1996), the Court considered whether advance notice was provided the defendant of the alleged perjury prior to sentencing. The Court held that the PSI provided the requisite notice. Id., at 462-3.

In Dunnigan, the Court acknowledged that the obstruction of justice enhancement should not be used merely because a defendant has testified and been convicted. The Court stated:

> Of course, not every accused who testifies at trial and is convicted will incur an enhanced sentence under Section 3C1.1 for committing perjury. As we have just observed, an accused may give inaccurate testimony due to confusion, mistake, or faulty memory. In other instances, an accused may testify to matters such as lack of capacity, insanity, duress, or self-defense.

6

> Her testimony may be truthful, but the jury may nonetheless find the testimony insufficient to excuse criminal liability or prove lack of intent.

507 U.S. at 95, 113 S.Ct. at 117.

It is respectfully suggested that in this case NASER ALDIN was found guilty because the jury suspected that he "had reasonable cause to believe" that something illegal was happening even though the Government had not proven that he knew that the pseudoephedrine was ultimately going to be used to manufacture methamphetamine. To suggest that NASER ALDIN was lying when he denied peddling pseudoephedrine bottles as samples to persons interested in manufacturing methamphetamine means that he obstructed justice is patently absurd and should be rejected. See, United States v. Hilliard, 31 F.3d 1509, 1519-21 (10th Cir. 1994) (lack of evidence that contradicted defendant's testimony invalidated obsstruction of justice enhancement).

For an alleged false statement made prior to trial to warrant an obstruction of justice enhancement, the Government must show how it adversely impacted on the investigation. Application Note 3(g) states that a defendant who provides "a materially false statement to a law enforcement officer" has obstructed justice if the false statement "significantly obstructed or impeded the official investigation or prosecution of the instant offense."

7

Application Note 5 contains a non-exhaustive list of conduct which does not normally warrant application of the obstruction of justice enhancement. Note 5(a) includes "providing a false name or identification document at arrest, except for such conduct actually resulted in a significant hinderance to the investigation or prosecution of the instant offense". Note 5(b) includes "making false statements, not under oath, to law enforcement officers, unless Application Note 3(g) above applies". Even if some credance is given to the confusion displayed by the U.S. Customs Service and the U.S. Attorney's Office over NASER ALDIN's name, NASER ALDIN's decision to voluntarily surrender from Canada to face the charges rendered that confusion immaterial. Without evidence that the investigation was obstructed, the enhancement should not apply. See generally, United States v. Witherell, 186 F.3d 1343 (11th Cir. 1999).

    2. On pages 11-12 and 14, paragraphs 42 and 57 of the PSI, it is recommended that NASER ALDIN had his offense level decreased by three levels as a minor participant pursuant to U.S.S.G., Section 3B1.2(b). NASER ALDIN would note that in paragraph 41, it is recommended that Saber Abdelmuti be given a four-level decrease as a minimal participant pursuant to Section 3B1.2(a). Abdelmuti also

rented a truck, and transported pseudoephredine to central Florida. The evidence in this case indicates that NASER ALDIN also rented a truck, and with the assistance of others, physically loaded the truck from the Shurguard Warehouse, and then drove the truck to 704 Bronough Circle in Boynton Beach. He then helped unload it. Periodically, over the next few days, he was observing throwing out empty bottles of Tru-Choice pseudoephredine. The evidence was clear that NASER ALDIN had no control over the quantity of pseudoephredine being stored at the Shurguard Warehouse or repackaged at the Boynton Beach townhouse. According to Application Note 1, Section 3B1.2, "[s]ubsection (a) applies to a defendant who plays a minimal role in concerted activity. It is intended to cover defendants who are plainly among the least culpable of those involved in the conduct of a group. Under this provision, the defendant's lack of knowledge or understanding of the scope and structure of the enterprise and of the activities of others is indicative of a role as minimal participant." There was no evidence to suggest that NASER ALDIN had any knowledge of the distribution of pseudoephredine to California. His role was limited, and as such, deserves a mitigating role downward adjustment of three or four points.

    3. On pages 13 and 14, paragraphs 52 and 58, of the PSI, no reduction for acceptance of responsibility under

U.S.S.G., Section 3E1.1 is recommended. NASER ALDIN maintains that his act of voluntary surrender from Canada to the U.S. Marshal's Service in Detroit Michigan upon learning of the filing of charges against him demonstrated an affirmative acceptance of responsibility not negated by his subsequent decision to challenge the Government's proof at trial. In a sense, NASER ALDIN voluntarily agreed to allow the Government to exercise jurisdiction over his person. In contrast to Noreiga, who hired defense lawyers to attempt to dismiss his Indictment while he remained in Panama, NASER ALDIN came forward to accept whatever consequences might befall him. The alternative way he could have handled the situation was to return to Palestine where he could live without fear of extradition. Ghandi Jaber took that alternative when he convinced the Government to grant him a bond, and then fled to Israel. NASER ALDIN admits that this is a novel request. To the extent that his voluntary surrender over international borders does not meet the strict statutory criteria entitling him to Section 3E1.1 relief, NASER ALDIN contends that it is a factor not adequately taken into account by the Guidelines. He has filed under separate cover a Motion for Downward Departure setting forth his position in that regard. At sentencing, NASER ALDIN intends to request a two-level reduction under either theory.

THEREFORE, the Defendant requests this Court sustain his Objections, and sentence him for an Offense Level 26, Criminal History I, with a range of from 63-78 months.

Respectfully submitted,

CHARLES G. WHITE, P.A.
Counsel for Defendant
1031 Ives Dairy Road
Suite 228
Miami, Florida 33179
Tel: (305) 914-0160
Fax: (305) 914-0166
Florida Bar No. 334170



CHARLES G. WHITE, ESQ.

CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that a true and correct copy of the foregoing was faxed and mailed this 24th day of May, 2002, to: THOMAS O'MALLEY, ASST. U.S. ATTORNEY, 500 E. Broward Blvd., 7th Floor, Fort Lauderdale, FL 33394, fax (954) 356-7336; and SHEILA TIERNEY, USPO, U.S. Probation Office, 501 S. Flagler Drive, Suite 400, West Palm Beach, FL 33401, fax (561) 655-1049; and mailed to defense counsel listed below.

RICHARD HAMAR, ESQ.
2437 Briarcrest Road
Beverly Hills, CA 90210
(Counsel for MOHAMMED SAMHAN)

JOHN R. HOWES, ESQ.
633 S.E. Third Ave., # 4F
Fort Lauderdale, FL 33301
(Counsel for RABAH EL HADDAD)

TIMOTHY BIASIELLO, ESQ.
33 N. Dearborn St., # 1015
Chicago, IL 60602
(Counsel for NIZAR FNEICHE)

FRED HADDAD, ESQ.
One Financial Plaza, # 2612
Fort Lauderdale, FL 33394
(Counsel for THOMAS NAROG)

 

_____
CHARLES G. WHITE, P.A.
Counsel for NASER ALDIN
1031 Ives Dairy Road
Suite 228
Miami, Florida 33179
Tel: (305) 914-0160
Fax: (305) 914-0166
Florida Bar No. 334170